**Joe Don PIGUE, Executor of the Estate of Elma H. Pigue; Lynda Nason; Betty Smith; Dorothy Hampton; Mary L. Underwood; Kathy Vaughan; Dianna Fort; Terri Younger; and Therolyn Parker, Appellants,**

v.

**CHRISTIAN COUNTY BOARD OF EDUCATION; James C. Jury, Superintendent; Wanda Bonnie Lynch; Chairperson; Daniel N. Thomas, Vice–Chairman; Gary P. Lester; John R. Nowak and Barry D. Cornelius, Board Members, Appellees.**

No. 2000–CA–000789–MR.

Court of Appeals of Kentucky.

July 13, 2001.

Discretionary Review Denied
Feb. 13, 2002.

Dennis J. Courtney, Murray, KY, for Appellants.

Ben S. Fletcher III, Hopkinsville, KY, for Appellees.

Before COMBS, EMBERTON and TACKETT, Judges.

*OPINION*

EMBERTON, Judge:

The appellants are teachers employed by the Christian County Board of Education who allege that the Board's reduction of their extended employment days was in violation of Kentucky Revised Statutes (KRS) 161.760. They further allege that the Board violated KRS 61.805 *et seq.*, the open meetings law. The trial court held the reduction in extended employment days was pursuant to a uniform plan and that there was no violation of the open meetings law. We affirm in part and reverse and remand in part.

On March 25, 1999, the Board reduced the extended employment days of forty-six teachers in the school district, including the appellants. Eight of the nine appellants are library media specialists and one is a home economics teacher. A letter was sent to those who had their days reduced informing them that the reduction was based on "budget allocations." Although not specifically stated in the letters, the reduction was made to allow funding of an Alternative Learning Center.

This action was then filed by the teachers on October 4, 1999, and on October 8, 1999, the Board filed its answer, interrogatories, and request for production of documents. Pursuant to notice, appellants Pigue and Nason, were deposed on November 16, 1999.

On November 23, 1999, Daniel Thomas, Vice–Chairman of the Board, filed his motion for summary judgment stating there was no evidence the open meetings law had been violated and that he had no individual liability.[1] The following day, the Board filed its motion for summary judgment based on its position that a reduction in the extended employment days was not a reduction in salary, and therefore compliance with KRS 161.760 was unnecessary. The teachers then filed their motion for summary judgment and the three motions were heard on December 8, 1999.

■ On the date of the hearing, the Board filed its response to the teachers' motion and for the first time asserted that the reduction in extended employment days was pursuant to a uniform plan. The teachers' request for time to conduct discovery was denied. The trial court then permitted Superintendent Jury to testify that to his knowledge all teachers other than agricultural teachers received reductions in extended employment days. The Board's records, however, contradict Jury's statement and show that of the approximately six hundred certified employees, *only forty-six are mentioned* in the plan to receive reductions. No administrator received a reduction of days, nor did the middle school or high school guidance counselors. Not all teachers, therefore, were included in the plan.[2] Assistant Superintendent Clyde Wallace testified that while not all teachers were included in the plan, all teachers of similar class and responsibility were reduced.

■ KRS 161.760(1) provides in part:

The superintendent of schools shall give notice not later than July 1 each year to each teacher who holds a contract valid for the succeeding school year, stating the best estimate as to the salary to be paid the teacher during the year. The salary shall not be lower than the salary paid during the preceding school year, unless the reduction is a part of a uniform plan affecting all teachers in the entire district, or unless there is a reduction of responsibilities.

The reduction in extended employment days is a reduction in salary:

[A]lthough our statutes do not require a school district to compensate its certified personnel for extra services, once extra compensation is paid, no reduction thereof may be made except in the two situations allowed by KRS 161.760(1). As the appellants' duties were not decreased and as they were not provided notice of the reduction in salary, the reductions were validly made only if the administrative salary schedule was a part of a uniform plan affecting the entire district.[3]

■ The Board could reduce the teachers' extended employment days only if there was a uniform plan to be implemented or the teachers received a corresponding reduction in responsibilities:

The clear wording of the statute mandates that reductions in salary which are

---

1. Although the Board members were sued in their official capacity, the issue of immunity is not raised on appeal.

2. Administrators other than superintendents are teachers under KRS 161.760. *Estreicher*
*v. Board of Education of Kenton County,* Ky., 950 S.W.2d 839 (1997).

3. *Preuss v. Board of Education of Daviess County,* Ky.App., 667 S.W.2d 391, 393 (1984).

a part of "a uniform plan affecting all teachers in the entire district" may be had without the specific notice required in subsection (3); this latter section is designed to give notice only to those persons who have suffered a reduction in responsibility and corresponding reduction in salary outside of an overall plan affecting all teachers.[4]

In *Preuss, supra,* and *White, supra,* the legislative meaning of a "uniform plan affecting all teachers in the entire district" was the focus of the court. A brief recitation of the facts of each case is useful in understanding the court's analysis. In *Preuss,* all administrators in the system were paid a salary comprised of a base amount determined by a single salary schedule and each received extended employment pay calculated by multiplying the days worked in excess of the one-hundred-eighty-five-day school year. Each received an additional sum for extra services based on an index figure. Under the Board's new method there was simply a bottom line salary based on experience and responsibilities. A challenge to the plan was made on the basis that only administrators were encompassed by the plan. Emphasizing that only administrators received payment for extra services, the court held that teachers did not have to be included for uniformity. As explained by the court:

"... If it is true that decrease of a component of salary for extra service (which only administrators are paid) is a decrease in salary even though total salary increases as Plaintiff has successfully argued, then it must also follow that teachers don't have to be decreased in order to have uniformity. Why not-because they perform no extra service and are paid for none. If the reduction of Plaintiff's salary had been in the 'base salary' component teachers would also have had to be reduced in order for the plan to have been uniform because teachers and administrators of the same rank and experience are paid the same base salary. But that was not the case here. The reduction decreased only a component of salary paid to principals, hence in order to be uniform it is necessary only that all principals with the same education, experience and other classifying factors received the same pay throughout the entire system. The Court is satisfied that was done."[5]

Subsequently, in *White, supra,* the court rejected the notion that a "uniform plan" must affect all teachers in the entire district. The number of extended employment days was no longer based on the number of days worked, but on the number of students under each teacher's supervision. Thus, although some did have extended employment days reduced, others remained the same. The court concluded that if all teachers are included in the plan even though not all are affected, uniformity is obtained.

Essentially, we are called upon to determine the legislative meaning of the phrase "a uniform plan affecting all teachers in the entire district." We do not deem this to mean that every teacher must suffer a like impact from a plan, or indeed any impact at all. Rather, we believe it to mean that a plan encompassing every teacher is valid notwithstanding that some teachers may be situated outside the scope of impact. Neither the authorities cited by the appellant nor any authority to which we have been directed requires the special notice of the nature of that provided in

4. *White v. Board of Education,* Ky.App., 697 S.W.2d 161, 162 (1985).

5. 667 S.W.2d at 394.

KRS 161.760(3) as a condition precedent to implementation of a state-mandated plan encompassing all teachers simply because some teachers are affected more than others or perhaps some teachers are not affected at all. Therefore, we conclude—as did the trial court—that the treatment of the appellant was in conformance with all statutory requirements.[6]

Because of the swift resolution of this case at the trial court level, there was minimal discovery conducted. However, based on the Board's records and because no evidence is offered to the contrary, it is clear that the plan submitted does not attempt to include every teacher. In fact, only specific teachers are targeted to receive the reductions. Yet, the Board insists that uniformity is achieved because all teachers of the same responsibility in a like class had the same number of extended employment days reduced.

We realize a school board must be permitted to adjust its budget to meet the concerns and needs of the district. The legislature, however, has required that there be uniformity in making such adjustments so that no teacher or class of teachers is sacrificed. The statute and *White, supra,* make clear that all teachers must be encompassed by the plan even though not all are affected by its implementation. Such a requirement prevents the arbitrary reduction of salaries of a targeted class of teachers within a single district. In this case, while the Board's plan may be the most expeditious way of obtaining funds for its Alternative Learning Center, it is clear that the plan is not uniform.

In the absence of a uniform plan, a reduction in salary of a teacher must be accompanied by a reduction of responsibility, and written notice stating the specific reason for the reduction must be furnished to the teacher no later than May 15.[7] Because the trial court did not reach the issue of whether the teachers received a reduction in responsibility or the resulting issue of sufficiency of the notice, we do not address these issues and therefore remand the case to the trial court for further consideration. It does appear, that should either party request additional time for discovery, a reasonable time should be permitted.

We agree with the trial court that summary judgment was appropriate as to the allegation that the Board violated the open meetings law. Based on the affidavits of several members of the Board it appears there was no violation. Appellants offered no evidence to the contrary, and have failed to indicate to this court what, if any, violation occurred.[8]

The judgment of the Christian Circuit Court is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

ALL CONCUR.

---

6. *White, supra,* at 162–163.

7. KRS 161.760(3).

8. *Steelvest, Inc. v. Scansteel Service Ctr.,* Ky., 807 S.W.2d 476 (1991).